UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

───────────────

№ 08-CV-2258 (JFB) (ARL)

───────────────

JAMES MONAHAN, individually and on behalf of certain
REAL ESTATE INVESTORS,

Plaintiff,

VERSUS

RAYMOND PEÑA, DORIS PEÑA, ELADIO SANCHEZ,
YUMA BAY DEVELOPMENT CORPORATION, JUAN CARLOS LOPEZ, BRIGID
LENDERBORG, and LENDERBORG LENDING SERVICE,

Defendants.

───────────────

**MEMORANDUM AND ORDER**
August 18, 2009

───────────────

JOSEPH F. BIANCO, District Judge:

Plaintiff James Monahan (hereinafter, "plaintiff") brought the instant case on behalf of himself and real estate investors, regarding investments made into a real estate development project in the Dominican Republic. Defendants move to dismiss the Complaint, pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons stated below, the Court grants defendants' motion to dismiss the Amended Complaint for lack of subject matter jurisdiction pursuant to the diversity statute, 28 U.S.C. § 1332. However, plaintiff has filed a motion to amend to correct the jurisdictional defect in a Second Amended Complaint, and the Court will require additional briefing to address this proposed amendment.

I. BACKGROUND

A. Facts

The following facts are taken from the Amended Complaint ("Am. Compl."), as well as the defendants' affidavits and exhibits.

Plaintiff is a corporate officer of Panam Management Corp., Inc. ("Panam"), a real

estate marketing company with offices in New York and the Dominican Republic. On January 20, 2006, Panam executed a pre-development marketing contract with defendant Yuma Bay Development Corporation ("Yuma"), for the promotion and sale of residential units at a resort called the "Yuma Bay Resort Village" in the Dominican Republic. (Am. Compl. ¶ 13.) Pursuant to this contract, Panam was to be the defendants' exclusive real estate marketing agent and marketing firm until December 31, 2009. (*Id*. ¶ 14.)

Plaintiff alleges that Panam performed its obligations pursuant to this agreement, which included brokering the sale of approximately 59 pre-construction residential sale contracts, called "Option to Purchase" contracts, between Yuma and real estate investors between January 2006 and August 2006. (*Id*. ¶¶ 16, 24, 25.) Pursuant to these Option to Purchase contracts, the investors made down payments, and were told that the down payments would be held in an escrow account with the Stewart Title Company. (*Id*. ¶ 25.) Plaintiff alleges that 27 of the investors have assigned their claims against Yuma to defendant, which includes an aggregate of $192,744.00 in down payments. (*Id*. ¶¶ 1, 24, 29.)[1] The largest down payment made by any individual investor who assigned his claim to plaintiff was made by Stewart Brier, in the amount of twenty-seven thousand dollars ($27,000). (*Id*. ¶ 1.)

---

[1] The assignments were not alleged as part of the original complaint in this action. The assignments were all filed as an exhibit to the Amended Complaint, and were all dated during November 2008, which was after the defendants made an initial motion to dismiss the instant action for lack of subject matter jurisdiction on October 24, 2008. (Am. Compl. Ex. A.)

The individual real estate investors also paid real estate brokerage fees to plaintiff for the sale of the pre-construction residential units that they purchased from Yuma. (*Id*. ¶ 28.) Plaintiff alleges that defendants represented to the real estate investors that they would return down payments in full if the investors were not "comfortable with the project," and if their units did not appreciate by at least fifteen percent (15%) in value within 180 days after execution of the sale agreements. (*Id*. ¶ 37.)

Yuma, however, allegedly did not perform under Option to Purchase, by failing to construct the residential units that the real estate investors agreed to purchase. (*Id*. ¶ 30.) According to the Amended Complaint, the Yuma Bay Resort Village did not exist, and defendants failed to disclose to the investors that they were unable to obtain necessary government approval to develop the land, and that they were not registered to do business in the Dominican Republic. (*Id*. ¶ 41.)

Plaintiff claims that defendants also breached the January 20, 2006 agreement with Panam, by failing to pay eight percent (8%) commissions on total sales, and by failing to pay for Panam's expenses. (*Id*. ¶ 17.) In addition, plaintiff alleges that defendants owe five hundred thousand dollars ($500,000) in liquidated damages under the terms and conditions of the same agreement for early termination. (*Id*. ¶¶ 18, 20-21.)

Based upon these facts, plaintiff alleges breach of contract on the January 20, 2007 agreement, and for breach of the Option to Purchase agreements on behalf of the 27 investors who have assigned their claims to plaintiff. (*Id*. ¶¶ 12-34.) In addition, plaintiff alleges additional claims on behalf of the assignor investors, including: (1) fraud and misrepresentation (*Id*. ¶¶ 35-44); (2)

2

conversion (*Id*. ¶¶ 45-48); and (3) unjust enrichment. (*Id*. ¶¶ 49-58). Plaintiff claims to have federal jurisdiction based on diversity jurisdiction under 28 U.S.C. § 1332, alleging that the defendants are all residents of Florida, and that the amount in controversy exceeds seventy-five thousand dollars ($75,000) based on an aggregation of the breach of contract claim he has alleged, along with the approximately $193,000 in claims that were assigned to him by the investors to recover their down payments. (*Id*. ¶¶ 1-6.)

By the time that this action was instituted, plaintiff had already instituted two civil actions in the Dominican Republic against defendant Yuma regarding the same subject matter. (Defendants' Memorandum of Law ("Defs.' Mem."), Exs. D, E.)

B. Procedural History

On June 5, 2008, plaintiff filed the complaint in the instant action. By Order dated July 18, 2008, the Honorable Arlene R. Lindsay, United States Magistrate Judge, extended the time for defendants to respond to the complaint until August 4, 2008. On September 2, 2008, defendants submitted a letter to the Court, requesting leave to file a motion to dismiss. On October 24, 2008, defendants filed a motion to dismiss, arguing, *inter alia*, that the plaintiff lacked standing to bring the instant suit because he was not the real party in interest.

Plaintiff subsequently requested leave to file an Amended Complaint, which was granted, and filed on November 25, 2008. The Amended Complaint contained, in Exhibit A, assignments from the 27 real estate investors whom plaintiff claims to be suing behalf of, all dated during November 2008. (Am. Compl. ¶ 1 & Ex. A.)[2] Defendants refiled their motion to dismiss on December 2, 2008, plaintiff filed opposition papers on January 22, 2009, and reply papers were filed by defendants on February 2, 2009. The Court heard oral argument in this matter on June 5, 2009. In response to concerns expressed by the Court that plaintiff had failed to adequately address defendants' subject matter jurisdiction and forum selection clause arguments in their papers, plaintiff requested leave to submit supplemental briefing, which was granted. Plaintiff submitted supplemental briefing by letter dated June 15, 2009, and defendants replied by letter dated June 16, 2009. This matter is fully submitted.

II. STANDARD OF REVIEW

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). In reviewing a motion to dismiss under Rule 12(b)(1), the court "must accept as true all material factual allegations in the complaint, but [it is] not to draw inferences from the complaint favorable to plaintiffs." *J.S. ex rel. N.S. v. Attica Cent.*

---

[2] The Assignments state the following: "We, the undersigned investors, who executed real estate purchase agreements with Raymond Peña, President of Yuma Development Corp., jointly assign our rights to James Monahan to collect the debt owed to us. This assignment is given to James Monahan, (the party who brokered the sales transaction between the investors and defendants), to bring legal action against the defendant, Raymond Peña and all other defendants, to collect the monies given to defendants as our deposits on residential units in the total amount of One Hundred Ninety Two Thousand, Seven Hundred Forty Four ($192,744.00) Dollars."

3

*Schs.*, 386 F.3d 107, 110 (2d Cir. 2004) (citation omitted). Moreover, the court "may consider affidavits and other materials beyond the pleadings to resolve the jurisdictional issue, but [it] may not rely on conclusory or hearsay statements contained in the affidavits." *Id.* (citations omitted). "The plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence." *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005). The Court may also raise the issue of subject matter jurisdiction at any time *sua sponte*. *See, e.g., McGinty v. New York*, 251 F.3d 84, 90 (2d Cir. 2001) ("Whether a federal court has subject matter jurisdiction is a question that may be raised at any time . . . by the court *sua sponte*.") (internal quotation marks omitted).

III. DISCUSSION

Defendants argue that this Court lacks diversity subject matter jurisdiction over the instant action because the Amended Complaint fails to adequately allege individual damages sufficient to satisfy the $75,000 threshold jurisdictional amount in controversy requirement under 28 U.S.C. § 1332(a)(2). For the reasons stated below, the Court agrees.

As discussed *supra*, plaintiff's claims for damages arise from two sources: (1) his contract claim regarding breach of the January 20, 2006 Memorandum Agreement between Panam and Yuma for an amount in excess of $500,000; and (2) breach of the Option to Purchase contracts *on behalf of* 27 separate, individual real estate investors, who suffered approximately $193,000 actual damages in the aggregate.[3]

As a threshold matter, plaintiff lacks standing to sue for breach of the January 20, 2006 Memorandum Agreement, between Panam and Yuma. Plaintiff is plainly not a party to that contractual agreement, and not an intended third-party beneficiary.[4] *See, e.g.,*

---

[3] The Court notes that the plaintiff has also alleged punitive damages on behalf of the investors in excess of the jurisdictional amount as part of the tort claims that he has alleged in addition to the breach of contract claim. It is well-settled within the Second Circuit that "[g]iven their more speculative nature, 'the trial court is plainly not compelled to accept a claim of punitive damages, however unwarranted, made for the purpose of conferring federal jurisdiction.'" *Douce v. Origin ID TMAA 1404-236-5547*, No. 08-CV-0483 (DLC), 2008 WL 2755831, at *3 (S.D.N.Y. July 14, 2008) (quoting *Zahn v. Int'l Paper Co.,* 469 F.2d 1033, 1033 n.1 (2d Cir. 1972)). Defendants argue that the tort claims are duplicative of the breach of contract claim and, therefore, the punitive damages attached to those claims should not be considered in determining whether the jurisdictional amount is satisfied. (Defs.' Mem. at 7.) The plaintiff did not respond to this argument and so have waived their right to contest this point, *see Laugh Factory, Inc. v. Baciano*, 608 F. Supp. 2d 549, 560 (S.D.N.Y. 2009); but, in any event, the Court finds the defendants' argument compelling and, therefore, exercises its discretion to not include the punitive damage claims in determining whether the diversity jurisdictional threshold amount has been satisfied. *See, e.g., Graubart v. Jazz Images, Inc.*, No. 02-CV-4645 (KMK), 2006 WL 1140724, at *4 (S.D.N.Y. Apr. 27, 2006) (punitive damages arising from tort claims not included in consideration of jurisdictional threshold amount, where the tort claims were merely duplicative of breach of contract claim, and therefore unrecoverable under New York law).

[4] The terms and conditions of the January 20, 2006 agreement make it clear that Panam has no authority to assign the agreement without Yuma's consent, and that there are no intended third-party beneficiaries to the agreement. *(See* Memorandum Agreement (Defs.' Mem Ex. B) at § 2.2 ("The present document is undersigned *intuitu personae*

4

*Empire Volkswagen, Inc. v. World-Wide Volkswagen Corp.,* 627 F. Supp. 1202, 1212 (S.D.N.Y. 1986), *aff'd*, 814 F.2d 90 (2d Cir. 1987) (stating that breach of contract may only be asserted by contracting party or third-party beneficiary). In addition, plaintiff, as an officer, has no standing to sue to vindicate the rights of his corporation. *See, e.g., Wein v. Fensterstock*, No. 04-CV-4640 (RO), 2004 WL 2423684, at *1 (S.D.N.Y. Oct. 28, 2004) (plaintiff as officer of corporation lacks standing to bring lawsuit in his own name on behalf of corporation for breach of contract; corporation is the real party in interest). Accordingly, plaintiff's cause of action for breach of the January 20, 2006 agreement between Panam and Yuma must be dismissed for lack of standing.[5]

Without the benefit of the damages alleged in the contract breach claim for the January 20, 2006 Memorandum Agreement, the only remaining claims are those that plaintiff brings on behalf of the investors who assigned their claims to him. Since it is undisputed in this case that none of the 27 investors have a claim that individually exceeds the jurisdictional amount, the issue for the Court to decide is whether the assigned claims may be aggregated for the purposes of the jurisdictional threshold amount.

---

and consequently, PANAM cannot assign, deliver, transfer or delegate any other physical person or other company besides PANAM, without previous or written consent from YUMA BAY.").)

[5] Because this Court dismisses plaintiff's claim against Yuma for breach of the January 20, 2006 agreement for failing to name the real party in interest, the Court is going to establish a briefing schedule to determine whether or not leave should be granted pursuant to Rules 15(a)(2) and 17(a)(3) of the Federal Rules of Civil Procedure, as discussed at the conclusion of this Memorandum and Order.

Under the Second Circuit's decision in *Airlines Reporting Corporation v. S and N Travel, Inc.*, 58 F.3d 857, 861-62 (2d Cir. 1995), it is evident that the "real and substantial parties" in interest in this litigation are the individual investors who assigned their claims to plaintiff, not plaintiff himself. Although plaintiff is correct in asserting that he is a party in interest for the purposes of Rule 17(a) of the Federal Rules of Civil Procedure, *Airlines Reporting Corporation* remarked that the Supreme Court had established a more stringent standard for determining the parties in interest *for diversity purposes*, specifically that, "'citizens' upon whose diversity a plaintiff grounds jurisdiction *must be real and substantial parties to the controversy.*" *Id.* at 861 (quoting *Navarro Savings Ass'n v. Lee*, 446 U.S. 458, 460 (1980)); *Hilton Hotels Corp. v. Damornay Antiques, Inc.,* No. 99-CV-4883 (MBM), 1999 WL 959371, at *5 (S.D.N.Y. Oct. 20, 1999) ("[T]he standards for determining a 'real party in interest' under Fed.R.Civ.P. 17 and for ascertaining whether diversity jurisdiction exists under section 1332 are not identical."). Accordingly, the Second Circuit noted that where a plaintiff "acts merely as an agent representing the interests of others," the assignors are the "real and substantial parties to th[e] controversy," and therefore are the appropriate parties that should be considered for determining whether the diversity jurisdictional requirements have been satisfied. *See Airlines Reporting Corp.,* 58 F.3d at 862. Applying these standards, the Second Circuit found that where the plaintiff was asserting claims on behalf of twenty-six airlines carriers against a defaulting travel agent based on assignments to the plaintiff, the airline carriers were the real and substantial parties in interest for diversity purposes. *Id.* Here, just as in *Airlines Reporting Corporation*, plaintiff has no

independent interest in the litigation other than as acting as a "mere conduit" for the individual claims of the investors.[6] *Id.; see also Kades v. Organic, Inc.*, No. 00-CV-3671 (LTS), 2003 WL 470331, at *5 (S.D.N.Y. Feb. 24, 2003) (considering assignees as real parties in interest for diversity purposes where litigation was brought in representative capacity and record indicated that assignments were made for the litigation).

Further, the Court finds that the assignments to plaintiff were collusive under 28 U.S.C. § 1359, which provides that "[a] district court shall not have jurisdiction of a civil action in which any party, by assignment or otherwise, has been improperly or collusively made or joined to invoke the jurisdiction of such court." Under this section, courts "give careful scrutiny to assignments which might operate to manufacture diversity jurisdiction," because "'such devices, unless controlled, can provide a simple means of expanding federal diversity jurisdiction far beyond [its] purpose.'" *Airlines Reporting Corp.,* 58 F.3d at 862 (quoting *Prudential Oil Corp. v. Phillips Petroleum Co.*, 546 F.2d 469, 474 (2d Cir. 1976)). In considering whether an assignment violates § 1359, courts consider the following non-exclusive factors: "the assignee's lack of a previous connection with the claim assigned, the remittance by the assignee to the assignor of any recovery, whether the assignor actually controls the conduct of the litigation, the timing of the assignment, the lack of any meaningful consideration of the assignment, and the underlying purpose of the assignment." *Id.* at 863 (internal citations omitted); *accord Catskill Dev., L.L.C. v. Park Place Ent'mt Corp.*, 547 F.3d 115, 124 (2d Cir. 2008).

As in *Airlines Reporting Corporation*, powerful factors in this case counsel in favor of finding that the assignments were made collusively, including, that: (1) the assignments were only made after the defendants challenged jurisdiction in this case; (2) that the proceeds, less costs, are to be remitted to the investors; and (3) that the admitted purpose of the assignment was merely to create a conduit for collection of all the claims. *See Airlines Reporting Corp.,* 58 F.3d at 864 (finding that assignments were collusive under § 1359, where the assignments were made after jurisdiction was challenged and there was no meaningful consideration for the assignments); *see also Kramer v. Carribean Mills, Inc.*, 394 U.S. 823, 830 (1969) (assignment for collection only, motivated by desire to make diversity jurisdiction available, falls within the "very core" of §1359).

Since the Court has determined that the individual investors are the relevant parties to be considered as plaintiffs for diversity purposes, the Court proceeds to analyze whether the elements of the diversity statute have been met. *See Airlines Reporting Corp.*, 58 F.3d at 864 (analyzing whether diversity requirements by assignors of claims).

Plaintiff's argument that the claims must be aggregated as they seek relief from a "common fund"–the escrow account into which the investors' down payments were allegedly deposited–is without merit. The well-settled baseline "non-aggregation" principle establishes that "each of several plaintiffs asserting separate and distinct

---

[6] As plaintiff states in his opposition papers, "[i]nvestors have asked plaintiff to bring the instant action to obtain the monies they invested in defendants' failed project . . . [t]he investors/assignors have a common interest to move collectively to use the plaintiff to obtain their money." (Pl.'s Mem. at 8.)

claims must satisfy the jurisdictional-amount requirement if its claim is to survive a motion to dismiss." *Gilman v. BHC Sec., Inc.*, 104 F.3d 1418, 1422 (2d Cir. 1997) (citation and quotation marks omitted). An exception to this principle exists, called the "common fund" exception where "several plaintiffs unite to enforce a single title or right, in which they have a common undivided interest, it is enough if their interests collectively equal the jurisdictional amount." *Id.* (citation and quotation marks omitted). In *Gilman*, the Second Circuit clarified that the common fund exception applies "only when several parties have a common, undivided interest and a single title or right is involved" and the "paradigm cases allowing aggregation of claims are those which involve a single indivisible res, such as an estate, a piece of property (the classic example) or an insurance policy." *Id*. Although plaintiffs' down payments may have been co-mingled in one account, the common fund doctrine does not apply where there are individual rights to funds in that account, and any recovery can be allocated to the plaintiffs based upon their individual claims. *Id.* at 1427 ("[W]hat controls is the nature of the right asserted, not whether successful vindication of the right will lead to a single pool of money that will be allocated among the plaintiffs."). The common fund exception does not apply to the instant case because there is no single res with an undivided interest; rather, the investors are seeking vindication of their individual rights to recover the amount that they each deposited under their individual contracts to purchase a unit in the Yuma Bay Development. *See Gilman,* 104 F.3d at 1424-48 (finding that the common fund exception did not apply where the damages that each plaintiff claimed arose from separate, pre-litigation transactions with the defendant); *Fein v. Chyrsler Corp.*, No. 98-CV-4113 (CPS), 1998 WL 34032284, at *3 (E.D.N.Y. Sept. 29, 1998) ("[B]eing able to trace each plaintiff's claim for damages to a specific purchase does not give rise to the common fund exception.").[7]

Therefore, because the 27 investors are each seeking vindication of individual rights, each must independently satisfy the jurisdictional amount under the non-aggregation principle. *Airlines Reporting Corp.*, 58 F.3d at 864 ("'When, as here, each of several plaintiffs in a lawsuit is asserting independent rights, each must independently plead the jurisdictional amount.'") (quoting *Cox v. Livingston*, 407 F.2d 392, 393 (2d Cir. 1969)). Accordingly, since not a single of investor has a claim that is in excess of the $75,000 threshold, the jurisdictional requirement is not satisfied, and the court must dismiss the amended complaint for lack of subject matter jurisdiction.[8] *See id.* at 864

---

[7] *See also Asociacion Nacional de Pescadores a Pequena Escala o Artesanales de Colomblia (ANPAC) v. Dow Quimica de Colomblia, S.A.,* 988 F.2d 559, 563 (5th Cir. 1993) (holding that claims by fishermen for lost income and personal injuries from chemical spill were "individual" and not aggregable for jurisdictional purposes because "one plaintiff's recovery is neither dependent upon, nor necessarily reduced by, another's"); *Griffith v. Sealtite Corp.*, 903 F.2d 495, 498 (7th Cir. 1990) (holding that workers' claims for wages under a single employment contract "were separate and distinct" and could not be "aggregate[d]. . . to satisfy the jurisdictional amount"); *Lonnquist v. J.C. Penney Co.*, 421 F.2d 597, 599-600 (10th Cir. 1970) (holding that claims that department stores owed plaintiffs refunds for allegedly usurious interest charges were "separate and distinct").

[8] Plaintiff also opposed defendants' motion to dismiss on the grounds that he claims to be entitled to a default judgment. There are two technical problems with plaintiff's assertion: (1) he has not actually moved for a default judgment,

7

(dismissing complaint for lack of subject matter jurisdiction where none of the non-diverse assignees of claims to plaintiff could independently satisfy the diversity amount in controversy requirement); *Gilman*. 104 F.3d at 1422 ("Th[e] rule against aggregating separate and distinct claims 'plainly mandates . . . that the entire case must be dismissed where none of the plaintiffs claims more than [the jurisdictional minimum.]'") (quoting *Zahn v. Int'l Paper Co.*, 414 U.S. 291, 300(1973)).

## IV. CONCLUSION

For the foregoing reasons, the Court dismisses the amended complaint, for lack of subject matter jurisdiction, pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.[9] However, because the Court dismisses plaintiff's claim against Yuma for the breach of the January 20, 2006 agreement for lack of standing based on failing to name the real party in interest, and plaintiff has indicated a desire to move to amend the complaint a second time including Panam as a plaintiff, the Court is compelled under Rule 17(a)(3) of the Federal Rules of Civil Procedure to consider whether to allow the plaintiff to add or substitute Panam as a plaintiff. Fed. R. Civ. P. 17(a)(3) ("The court may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action. "); *Advanced Magnetics, Inc. v. Bayfront Partners, Inc.*, 106 F.3d 11, 20 (2d Cir. 1997) (Rule 17(a)(3) substitution of plaintiffs "should be liberally allowed when

---

but rather, has inartfully pled default judgment as a counter-claim in the amended complaint (Am. Compl. ¶ 11); and (2) even if he had made a proper motion, he failed to seek entry of default from the Clerk of the Court prior to moving for default judgment, as is required by Rule 55(a) and Local Civil Rule 55.1. *See also Meehan v. Snow*, 652 F.2d 274, 276 (2d Cir. 1981) (first step in seeking default judgment is entry of default by clerk upon plaintiff's request). Although these technicalities alone would be sufficient to deny plaintiff relief to the extent he is actually seeking a cross-motion for default judgment, *Eisenberg v. District Attorney of the County of Kings*, 847 F. Supp. 1029, 1033 (E.D.N.Y. 1994), it would also have to be denied for the additional reason that this Court does not have the authority to grant default judgments over claims that it does not have subject matter jurisdiction over. *See Gonzalez v. Crosby*, 545 U.S. 524, 534 (2005) (noting the availability of Rule 60(b) to vacate judgments, including default judgments, that are "void for lack of subject-matter jurisdiction . . . since absence of jurisdiction altogether deprives a federal court of the power to adjudicate the rights of the parties"); *United States v. Forma*, 42 F.3d 759, 762 (2d Cir. 1994) (default judgments are void and must be vacated where there is no subject matter jurisdiction over a claim); *Swarna v. Al-Awadi*, 607 F. Supp. 2d 509, 529 (S.D.N.Y. 2009) (denying motion for default judgment against the nation of Kuwait where court lacked subject matter jurisdiction over claims asserted against Kuwait as a party). In any event, the Court also notes that there is no indication that the default was willful, or that plaintiff was prejudiced in the defendants' minor delay in responding to the complaint.

---

[9] Since the Court lacks subject matter jurisdiction over this case, the Court does not reach defendants' alternative arguments, that the complaint should be dismissed for lack of personal jurisdiction, improper venue, a valid venue selection clause, or failure to state a claim upon which relief may be granted, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See Rhulen Agency, Inc. v. Ala. Ins. Guar. Ass'n,* 896 F.2d 674, 678 (2d Cir. 1990) (noting that a motion to dismiss for failure to state a claim may be decided only after finding subject matter jurisdiction); *see also Galtieri v. Kelly*, 441 F. Supp. 2d 447, 458 n.10 (E.D.N.Y. 2006) (same).

8

the change is merely formal and in no way alters the original complaint's factual allegations as to the events or the participants," but a district court "retains some discretion to dismiss an action where there was no semblance of any reasonable basis for the naming of the incorrect party"); *see also Wiwa v. Royal Dutch Petroleum* Co., No. 96-CV-8386 (KMW), 2009 WL 464946 at *10 (S.D.N.Y. Feb. 25, 2009) (granting leave to add real party in interest pursuant to Rule 17(a)(3)). It is also well-settled that leave to amend a complaint should not be granted if the amendment would be futile in curing subject matter jurisdiction defects. *See Ruotolo v. City of N.Y.*, 514 F.3d 184, 191 (2d Cir. 2008) (leave to amend should be "freely given" absent "undue delay, bad faith, or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc."); *Smith v. Everson*, No. 06-CV-0791 (SJF), 2008 WL 818512, at *4 (E.D.N.Y. Mar. 21, 2008) ("Where a court would lack subject matter jurisdiction over the case as pleaded in the proposed amendment, the court may deny leave to amend on the ground of futility.") (internal citation and quotation marks omitted).

Accordingly, it is further ordered that the parties participate in a telephone conference on Tuesday, September 8, 2009 at 2:00 p.m. to establish a schedule for the parties to submit additional briefing regarding whether the Court should grant leave to the plaintiff to submit a Second Amended Complaint pursuant to Rule 15(a)(2) of the Federal Rules of Civil procedure, which must necessarily address, *inter alia*, whether proposed amendments would cure subject matter jurisdiction deficiencies. At the appropriate time, counsel for plaintiff shall initiate the call by getting counsel for defendants on the line, and shall then contact Chambers at (631) 712-5670.

SO ORDERED.

_____

JOSEPH F. BIANCO
United States District Judge

Dated: August 18, 2009
Central Islip, New York

\* \* \*

The attorney for plaintiff is Edward R. Adams, Esq., of Obermayer & Adams, LLP, 225 Broadway, Suite 1400, New York, New York 10007. The attorney for defendants is Samuel B. Reiner, II, Esq., admitted *pro hac vice*, of Reiner & Reiner, P.A., 9100 South Dadeland Boulevard, Suite 901, Miami, Florida 33156.

9