UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

———————————————
№ 08-CV-2258(JFB)(ARL)
———————————————

PANAM MANAGEMENT GROUP, INC. AND YUMA BAY REAL ESTATE PURCHASERS,

Plaintiffs,

VERSUS

RAYMOND PEÑA, DORIS PEÑA, ELADIO SANCHEZ,
YUMA BAY DEVELOPMENT CORPORATION, JUAN CARLOS LOPEZ, BRIGID
LENDERBORG, and LENDERBORG LENDING SERVICE,

Defendants.
———————————————

MEMORANDUM AND ORDER
September 14, 2010

———————————————

JOSEPH F. BIANCO, District Judge:

Plaintiffs Panam Management Group and Yuma Bay Real Estate Purchasers bring this diversity action alleging breach of contract and unjust enrichment. The defendants are Raymond Peña, Doris Peña, Eladio Sanchez, Yuma Bay Development Corporation, Juan Carlos Lopez, Brigid Lenderborg, and Lenderborg Lending Service.

Defendants, except Brigid Lenderborg and Lenderborg Lending, have moved to dismiss the Second Amended Complaint or, in the alternative, stay this action. As set forth below, the Court grants the motion in part and denies it in part. Specifically, the Court grants the motion to dismiss as to the claims asserted by the Yuma Bay Real Estate Purchasers, a collection of 27 investors who made down payments on a real-estate project defendants were purportedly developing in the Dominican Republic. The Court concludes, as it did in dismissing the First Amended Complaint in this action, that there is not a sufficient amount in controversy on the investors' claims for federal diversity jurisdiction to exist under 28 U.S.C. § 1332. However, the Court concludes that subject matter jurisdiction exists as to Panam Management's breach of contract claim because of a $500,000 liquidated-damages clause in the contract between Panam Management and the Yuma Bay Development Corporation. Additionally, although Panam Management's claim meets § 1332's requirements, the Court, in its discretion, declines to exercise supplemental

jurisdiction over the Yuma Bay Real Estate Purchasers' claims based on its original jurisdiction over Panam Management's claim.

The Court also denies the motion to dismiss the breach of contract claim brought by Panam Management Group on the other grounds asserted by defendants. This claim relates to a contract between Panam and Yuma Bay Development Corporation. As set forth in more detail below, the denial is without prejudice to defendants Raymond Peña, Doris Peña, Eladio Sanchez, and Juan Carlos Lopez renewing their arguments that Yuma Bay Development's corporate veil shields them from liability. Finally, the Court also denies the motion to stay without prejudice to renewal because it appears that the basis for the stay—a similar action taking place in the Dominican Republic—has itself been stayed.

I. BACKGROUND

The Court assumes familiarity with its August 18, 2009 Memorandum and Order, which sets out more fully the background of this case. In brief, James Monahan, an officer in Panam Management Group, initially filed this case on behalf of himself and a number of real-estate investors on June 5, 2008. The claims in this case have two sources. The first is a single contract ("the January 2006 Agreement") between plaintiff Panam Management and defendant Yuma Bay Residential Corporation. Under the terms of this agreement, Panam was to market and broker the sale of residential units at a resort community that Yuma Bay was developing in the Dominican Republic. The second is the option to purchase contracts between individual investors in the Yuma Bay project and Yuma Bay Residential Corporation ("the Option to Purchase Contracts"). Although neither Panam nor Monahan is a party to these contracts, 27 of the individual investors have assigned their claims to Monahan.

In an August 18, 2009 Memorandum and Order ("the August 18 Memorandum and Order"), the Court granted defendants' motion to dismiss the First Amended Complaint for lack of subject matter jurisdiction under 28 U.S.C. § 1332. The Court first held that Monahan did not have standing to assert any claims based on the January 2006 Agreement. It explained that Monahan was neither a party to that agreement, which was between Panam and Yuma Bay Residential Corporation, nor was he an intended third-party beneficiary of the agreement. (*See* Aug. 18 Mem. & Order at 4-5.)

The remaining claims were all based on the Option to Purchase Contracts. Initially, the Court noted that the individual investors—not Monahan—were the "'real and substantial parties in interest'" for purposes of determining if diversity jurisdiction existed. (*See* Aug. 18 Mem. & Order at 5.) Furthermore, the Court determined that the individual investors' assignment of their claims to Monahan was collusive and thus prohibited under 28 U.S.C. § 1359. Specifically, the Court reasoned "that: (1) the assignments [to Monahan] were only made after the defendants challenged jurisdiction in this case; (2) . . . the proceeds, less costs, are to be remitted to the investors; and (3) . . . the admitted purpose of the assignment was merely to create a conduit for collection of all the claims." (Aug. 18 Mem. & Order at 6.) Thus, because none of the investors'

2

claims standing alone exceeded $75,000 and because no exceptions to the amount-in-controversy requirement applied, the Court dismissed the claims relating to the Option to Purchase Contracts because it lacked subject-matter jurisdiction.

Following dismissal of the First Amended Complaint, the Court held a telephone conference at which it allowed plaintiff to file a Second Amended Complaint to attempt to cure the jurisdictional deficiencies and also set a briefing schedule for defendants' motion to dismiss that complaint. (*See* ECF No. 28.)

In the Second Amended Complaint, Monahan is no longer a named plaintiff. Instead, the plaintiffs are Panam Management and "Yuma Bay Real Estate Purchasers." The "Yuma Bay Real Estate Purchasers" does not appear to be a legal entity; instead, it seems to simply be a title that has been attached to the individual investors who have assigned their claims to Monahan.

The defendants are Raymond Peña, Doris Peña, Eladio Sanchez, and Juan Carlos Lopez, all of whom are officers of Yuma Bay Development; Yuma Bay Development Corporation itself; and Brigid Lenderborg and Lenderborg Lending Service. The new complaint asserts three causes of action. First, Panam asserts a breach of contract claim based on the January 2006 Agreement. (SAC ¶¶ 11-20.) Second, the Yuma Bay Real Estate Purchasers assert a breach of contract claim based on the Option to Purchase Contracts. (SAC ¶¶ 21-28.) Third, plaintiffs assert a claim for unjust enrichment based on defendants' alleged misrepresentations to the Yuma Bay Real Estate Purchasers regarding what was done with the down payments that the Purchasers made. (SAC ¶¶ 29-37.)

On October 7, 2009, all defendants, with the exception of Brigid Lenderborg and Lenderborg Lending Services,[1] moved to dismiss the Second Amended Complaint. Plaintiffs filed an opposition brief on November 6, 2009, and defendants filed their reply on November 17, 2009. The motion is fully submitted.

II. STANDARD OF REVIEW

When a court reviews a motion to dismiss for lack of subject-matter jurisdiction, it "must accept as true all material factual allegations in the complaint, but [it is] not to draw inferences from the complaint favorable to plaintiffs." *J.S. ex rel. N.S. v. Attica Cent. Schs.*, 386 F.3d 107, 110 (2d Cir. 2004) (citation omitted). Moreover, the court "may consider affidavits and other materials beyond the pleadings to resolve the jurisdictional issue, but [it] may not rely on conclusory or hearsay statements contained in the affidavits." *Id.* (citations omitted). "The plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence." *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005).

When a Court reviews a motion to dismiss for failure to state a claim for which relief can be granted, it must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *See Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir.

---

[1] Based on a review of the docket sheet, the Lenderborg defendants were never served with either the First Amended Complaint or the Second Amended Complaint.

2006); *Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 100 (2d Cir. 2005). "In order to survive a motion to dismiss under Rule 12(b)(6), a complaint must allege a plausible set of facts sufficient 'to raise a right to relief above the speculative level.'" *Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Mgmt. LLC*, 595 F.3d 86, 91 (2d Cir. 2010) (quoting *Twombly*, 550 U.S. at 555). This standard does not require "heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

III. DISCUSSION

A. Subject-Matter Jurisdiction

As noted above, this Court previously dismissed the First Amended Complaint in this action for lack of subject-matter jurisdiction and allowed plaintiff leave to amend to attempt to cure the jurisdictional deficiencies. The Court, therefore, examines as a threshold matter whether the Second Amended Complaint has corrected the jurisdictional problems previously identified.

1. Applicable Law

28 U.S.C. § 1332(a0 provides that a district court has jurisdiction when there is diversity of citizenship between the parties and the amount in controversy exceeds $75,000. 28 U.S.C. § 1332(a). Here, there is no dispute that diversity of citizenship exists. The Court thus turns to analyze the amount-in-controversy requirement.

In a case like this one, where there are multiple plaintiffs and federal jurisdiction is based on diversity, at least one plaintiff's claims, standing alone, must exceed the $75,000 amount-in-controversy requirement for the Court to have original jurisdiction over the action. As a general rule, multiple plaintiffs may not aggregate their claims in order to satisfy the amount-in-controversy requirement. *See, e.g.*, *Gilman v. BHC Secs.*, 104 F.3d 1418, 1422-23 (2d Cir. 1997); *cf. Colavito v. N.Y. Organ Donor Network, Inc.*, 438 F.3d 214, 221 (2d Cir. 2006) ("Different state claims brought by a *single plaintiff* may be aggregated for purposes of satisfying the amount-in-controversy requirement." (emphasis added)). Thus, in a multi-plaintiff action based on diversity jurisdiction, the Court has original federal jurisdiction *only* over the claims of the plaintiffs for which the amount-in-controversy exceeds $75,000.

However, if the Court has original jurisdiction over at least one plaintiff's claim, it may exercise supplemental jurisdiction over other plaintiffs' claims that do not exceed $75,000. *See Exxon Mobil Corp. v. Allapattah Servs. Inc.*, 545 U.S. 546, 559 (2005) ("When the well-pleaded complaint contains at least one claim that satisfies the amount-in-controversy requirement, and there are no other relevant jurisdictional defects, the district court, beyond all question, has original jurisdiction over that claim. . . . If the court has original jurisdiction over a single claim in the complaint, it has original jurisdiction over a 'civil action' within the meaning of [28 U.S.C.] § 1367(a), even if the civil action over which it has jurisdiction comprises fewer claims than were included in the complaint. Once the court determines it has original jurisdiction over the civil action, it can turn to the question whether it has a constitutional and statutory basis for

4

exercising supplemental jurisdiction over the other claims in the action.").[2]

Thus, the Court must determine (1) which claims it has original jurisdiction over; and (2) assuming it has original jurisdiction over some claims but not others, whether it should exercise supplemental jurisdiction over the claims for which it does not have original jurisdiction. As set forth below, the Court determines it has original jurisdiction over Panam Management's claims but not the Yuma Bay Real Estate Purchasers' claims. The Court further concludes, in its discretion, that it should not exercise supplemental jurisdiction over the Yuma Bay Real Estate Purchasers' claims.

2. Application

a. Original Jurisdiction

i. Panam's Claim

Panam's breach of contract claim is based on the January 2006 Agreement. The Agreement contains a $500,000 liquidated damages clause, and there is complete diversity of citizenship between Panam and the defendants. As such, the Court has subject-matter jurisdiction over Panam's breach of contract claim. *Cf.* 28 U.S.C. § 1332(a).

ii. The Yuma Bay Real Estate Purchasers' Claim

The Yuma Bay Real Estate Purchasers bring claims for breach of the Option to Purchase contracts and for unjust enrichment. The claimed damages on these claims are based on the total sum of the individual investors' down payments—$192,744.[3]

Thus, the situation is much the same as when the Court dismissed the First Amended Complaint. As with the August 18 Memorandum and Order, the real and substantial parties in interest on the Yuma

---

[2] Two earlier Supreme Court cases—*Clark v. Paul Gray, Inc.*, 306 U.S. 583 (1939) and *Zahn v. International Paper Co.*, 414 U.S. 291 (1973)—had held that *each* plaintiff in a multi-plaintiff case needed to satisfy the amount-in-controversy requirement for a court to exercise federal jurisdiction. *See Exxon-Mobil*, 545 U.S. at 554-55 (describing *Clark* and *Zahn*). In 1990, Congress enacted 28 U.S.C. § 1367, which gives federal courts supplemental jurisdiction over claims arising out of the "same case or controversy" as claims over which the court has original federal jurisdiction. Before *Exxon-Mobil*, lower courts had split as to whether *Clark* and *Zahn* survived § 1367's enactment. *See id.* at 551-52. The *Exxon-Mobil* Court held that they did not. *Id.* at 566-67 ("We hold that § 1367 by its plain text overruled *Clark* and *Zahn* and authorized supplemental jurisdiction over all claims by diverse parties arising out of the same Article III case or controversy, subject only to enumerated exceptions not applicable in the cases now before us.").

[3] The prayer for relief in the Second Amended Complaint seeks $600,000 on the unjust enrichment claim. This amount, however, appears to be based on the addition of punitive damages to the $192,744 figure. As it did in the August 18 Memorandum and Order, the Court declines to consider the punitive damages figure in determining whether the amount-in-controversy requirement is met because the unjust enrichment claim is duplicative of the breach of contract claim. (*See* Aug. 18 Mem. & Order at 4 n.3.)

5

Bay Real Estate Purchasers' claims are the individual investors, not "Yuma Bay Real Estate Purchasers." Nothing in the Second Amended Complaint indicates that "Yuma Bay Real Estate Purchasers" is a legal entity or that it has some existence apart from this lawsuit. Instead, it appears to simply be a name used to identify the individual investors who have assigned their claims to Monahan. In short, "Yuma Bay Real Estate Purchasers" is, at best,[4] "'an agent representing the interests of others,'" namely, the individual investors, and the investors, therefore, are the "'real and substantial parties to the controversy.'" (Aug. 18 Mem. & Order at 5 (quoting *Airlines Reporting Corp. v. S & N Travel, Inc.*, 58 F.3d 857, 862 (2d Cir. 1995)).)

None of the individual investors made a down payment exceeding the $75,000 amount-in-controversy requirement. (*See* SAC at 2-3.) Moreover, as discussed above, the general rule prohibits aggregating the individual investors' claims. Thus, under the general rule, the individual investors' claims cannot be added together so that amount in controversy exceeds the $75,000 figure. Furthermore, as this Court stated in the August 18 Memorandum and Order, the common-fund exception to the rule does not apply here. (Aug 18 Mem. & Order at 6-7.) As such, because none of the individual claims exceeds $75,000,[5] the Court lacks original jurisdiction over the Yuma Bay Purchasers' causes of action for breach of contract and unjust enrichment.

b. Supplemental Jurisdiction

However, because it has original jurisdiction over Panam Management's claim, the Court could potentially exercise supplemental jurisdiction over the Yuma Bay Real Estate Purchasers' claims pursuant to 28 U.S.C. § 1367. Section 1367(a) provides that, subject to the requirements of §§ 1367(b) and (c), district courts may exercise supplemental jurisdiction over claims that form part of the "same case or controversy" as a claim over which the court has original jurisdiction.[6] To determine whether claims form part of the "same case or controversy," the court should ask whether the claims "'derive from a common nucleus of operative fact.'" *Achtman v.*

---

[4] There is no evidence that the individual investors have assigned their claims to Yuma Bay Real Estate Purchasers. Instead, it appears the claims are still assigned to Monahan. In any event, even if there was evidence of an assignment to Yuma Bay Real Estate Purchasers, the Court would find those assignments to be collusive and violative of 28 U.S.C. § 1359 for the same reasons it found the assignments to Monahan to violate § 1359. (*See* Aug. 18 Mem. & Order at 6.)

[5] To the extent that Panam also asserts an unjust enrichment claim based on the Yuma Bay Real Estate Purchasers' down payments, the Second Amended Complaint provides no basis for the Court to infer that Panam suffered any injury as a result of defendants' alleged misrepresentations that form the basis of the unjust enrichment claim. (*See* SAC ¶¶ 29-37.) Therefore, Panam lacks standing to assert any such claim.

[6] "[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties." 28 U.S.C. § 1367(a).

*Kirby, McInerney, & Squire, LLP*, 464 F.3d 328, 335 (2d Cir. 2006) (quoting *Promisel v. First Am. Artificial Flowers Inc.*, 943 F.2d 251, 254 (2d Cir. 1991)). Here, the Court will assume *arguendo* that Panam Management's claim and the Yuma Bay Real Estate Purchasers' claims derive from a common nucleus of operative fact.

However, even if the requirements of § 1367(a) are met, § 1367(c) gives a court discretion to decline supplemental jurisdiction in the following situations:

> (1) the claim raises a novel or complex issue of State law,
>
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
>
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
>
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c). Here, the second category applies. The Yuma Bay Real Estate Purchasers' claims involve over 25 different investors; Panam's claim involves only a single contract. *Cf. Szendrey-Ramos v. First BanCorp.*, 512 F. Supp. 2d 81, 86 (D.P.R. 2007) (declining to exercise supplemental jurisdiction over state-law claims where those claims "far outnumber[ed]" the federal claims and scope of state-law claims exceeded that of federal claims). Each claim by an investor could require that the Court resolve issues unique to that investor, and the amount of the down payments (and, thus, potential damages) varies from investor-to-investor. Furthermore, although both Panam and the Yuma Bay Real Estate Purchasers bring breach of contract claims, these claims relate to different contracts–Panam's relates to the January 2006 Agreement and the Purchasers' relate to the Option to Purchase contracts. *See generally De Asencio v. Tyson Foods, Inc.*, 342 F.3d 301, 311 (3d Cir. 2003) ("Predomination under section 1367 generally goes to the type of claim, not the number of parties involved. But the disparity in numbers of similarly situated plaintiffs may be so great that it becomes dispositive by transforming the action to a substantial degree, by causing the federal tail represented by a comparatively small number of plaintiffs to wag what is in substance a state dog."). Under these circumstances, in its discretion, the Court declines to exercise supplemental jurisdiction over the Purchasers' claims because they substantially predominate over Panam's claim for which original jurisdiction exists.

### B. Defendants' Additional Arguments re: Panam Management's Claim

Defendants also raise a number of arguments as to why the Court, even if it has subject-matter jurisdiction over Panam Management's claim, should nonetheless dismiss the claim. As set forth below, the Court has determined that none of these arguments warrants dismissal of Panam's claim at this juncture.

### 1. Defendants' Argument Regarding the Proper Forum

First, defendants argue that a portion of the January 2006 Agreement requires that resolution of any dispute take place in the Dominican Republic. The relevant clause states as follows:

> This Memorandum Agreement will be managed and interpreted according to the laws of the Dominican Republic. Any dispute that arises as [a] consequence of the interpretation or execution of the present Memorandum Agreement and that won't be resolved in common agreement by the parties; this convenes to submit it to arbitration.

Thus, the clause contains two sub-parts–(1) a choice of law provision specifying Dominican Republic law as the applicable law for interpretation of the agreement and (2) an arbitration clause.

Although defendants' arguments regarding this clause are somewhat difficult to discern, they do not contend that this case should be submitted to arbitration. Indeed, they suggest that the arbitration clause has been waived. (*See* Defs.' Rep. Mem. of Law at 4 ("The fact that either party may have waived its right to arbitrate under the contract does not detract from the fact that Dominican law is to apply.").)[7] Thus, defendants are not seeking to invoke arbitration under the clause.

They argue, instead, that any disputes related to the clause should be resolved *in* the Dominican Republic. (*See* Defs.' Mem. of Law at 4-6 (arguing, *inter alia*, "[a]ll [s]uits" must "be [br]ought in Dominican Republic" and noting that Panam "in fact . . . has already filed suit in the Dominican Republic against Defendant Yuma . . ."). Nothing in the clause, however, mandates that any dispute resolution procedure—whether it be litigation or arbitration—take place in the Dominican Republic. Simply put, defendants cannot turn a choice-of-law provision into a forum-selection clause. *Cf., e.g.*, *Anderson v. Canarail, Inc.*, No. 05 Civ. 3828(HB), 2005 WL 2454072, at *3 (S.D.N.Y. Oct. 6, 2005) ("Although the Agreement states that Canadian law governs the relationship between the parties, it fails to provide a choice of forum provision. . . . Canarail argues that the choice of law clause should defeat jurisdiction in New York. A choice of law provision, however, does not automatically constitute a voluntary submission to personal jurisdiction in the forum. . . . Canarail cannot transform the choice of law provision into a choice of forum provision." (internal citations

---

[7] *See generally Baker & Taylor, Inc. v. AlphaCraze.com Corp.*, 602 F.3d 486, 490-92 (2d Cir. 2010) (determining that party had waived right to compel arbitration). The Court notes that this litigation has been pending for over two years and defendants have now filed two motions to dismiss. In neither motion did defendants explicitly seek to compel arbitration. Additionally, the parties have apparently engaged in litigation in the Dominican Republic without invoking the arbitration clause.

omitted)); *Creative Socio-Medics, Corp. v. City of Richmond*, 219 F. Supp. 2d 300, 307 (E.D.N.Y. 2002) ("[T]he Agreement provides that it is governed by the laws, rules and regulations of the Commonwealth of Virginia. . . . However, Richmond's reliance on the choice of law provision is misplaced. Choice of law questions are significantly different from questions of jurisdiction. Choice of law provisions, as opposed to forum selection clauses, have minimal jurisdictional implications." (internal citations and quotations omitted)); *In re Lois/USA, Inc.*, 264 B.R. 69, 101 (Bankr. S.D.N.Y. 2001) ("The choice-of-law clause does not address the court or courts in which the law is to be applied, and the forum selection clause does not address the law the chosen forum is to apply when the chosen forum—unlike as in the case here—hears the case. . . . A choice-of-law clause and a forum selection clause are not the same, and address different needs and concerns."). Additionally, defendants have not moved to dismiss on *forum non conveniens* or similar grounds. Thus, the Court declines to grant defendants' motion to dismiss Panam's claims on the grounds that the Dominican Republic is the proper forum for any dispute between the parties.

2. Piercing the Veil

Finally, the defendants who are officers of Yuma Bay Development Corporation—Raymond Peña, Doris Peña, Eladio Sanchez, and Juan Carlos Lopez—argue that Panam's claim against them should be dismissed because only the corporation is a party to the January 2006 Agreement and because the Second Amended Complaint does not assert a basis for piercing the corporate veil. Both parties assume that New York law applies to the question of whether the corporate veil should be pierced.

As noted above, however, the January 2006 Agreement contains a choice-of-law provision stating that Dominican Republic law should be used to interpret the agreement. Additionally, if the agreement's choice-of-law provision did not apply to this issue, the Court would generally look to New York's choice-of-law rules to determine what jurisdiction's law should be used to assess whether the veil should be pierced. *See, e.g.*, *In re Saba Enterprises*, 421 B.R. 626, 648-52 (Bankr. S.D.N.Y. 2009) (collecting cases and discussing exception to this rule).[8] Under New York choice-of-law rules, the law of the place of incorporation would be used. *See Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1456 (2d Cir. 1995) ("Because Atex was a Delaware corporation, Delaware law determines whether the corporate veil can be pierced in

---

[8] The exception discussed by the *Saba* court was a line of Second Circuit and Southern District of New York cases that applied New York law to veil-piercing questions regardless of the place of incorporation. The *Saba* court noted two features about these cases—(1) the parties had agreed to apply New York law to veil-piercing questions, and (2) the standards for veil-piercing were "virtually identical" under New York law and under the law that would have otherwise applied. *See* 421 B.R. at 649-50. Here, even assuming the parties have, based on the briefing, implicitly agreed to apply New York law to this issue, neither side has provided any information regarding the veil-piercing standards under Panamanian or Dominican law. Thus, the Court cannot determine how similar those standards are to New York law and has no basis to apply the exception here.

9

this instance."). Here, Yuma Bay Development is alleged to be a Panamanian corporation. (*See* SAC ¶ 3; Defs.' Reply Mem. of Law at 3-4; January 2006 Agreement at 1.)[9] Thus, assuming this is correct, and absent the choice-of-law provision, Panamanian law should be used to determine whether the veil should be pierced.

In any event, neither side has provided the Court with any information or argument as to Dominican or Panamanian law with respect to veil piercing. Therefore, the Court is not able to determine on this record whether any claim based on piercing the veil could survive a motion to dismiss. Accordingly, the Court denies the corporate officer defendants' motion to dismiss on this ground without prejudice to renewal. Defendants may renew their motion by submitting a brief to the Court addressing (1) what law should apply and (2) the substantive legal standards for veil piercing under the applicable law.

IV. MOTION TO STAY

Additionally, defendants argue, in the alternative, that the action should be stayed because Panam filed a lawsuit against Yuma Bay in the Dominican Republic in November 2006 based on Yuma Bay's alleged breach of the January 2006 Agreement. (*See* Defs.' Mem. of Law at 10.)[10] In its opposition brief, however, Panam contends that "[t]he action pending in the Dominican Court . . . between the parties has been stayed pending this Court's decision in the matter herein." (*See* Pl.'s Opp. Mem. of Law at 10 n.1.) Defendants' reply brief does not respond to Panam's assertion that the action in the Dominican Republic has been stayed, nor does it make any other argument on the stay issue. Thus, because the action in the Dominican Republic has apparently been stayed, the Court denies without prejudice defendants' motion to stay this action. The Court does so on the premise that the action in the Dominican Republic will remain stayed until this case is finally resolved. If the action in the Dominican Republic resumes before that time, either party may move to stay this action.[11]

V. CONCLUSION

For the reasons set forth above, the Court grants defendants' motion to dismiss in part and denies it in part. The Court grants the motion to dismiss as to the claims asserted by the Yuma Bay Real Estate Purchasers. The Court denies the motion to dismiss as to the breach of contract claim brought by Panam Management. The Court also denies without prejudice the corporate officer defendants' motion to dismiss the claims against them. Additionally, the Court denies without prejudice defendants' motion to stay this action. The remaining

---

[9] The Court notes that the Option to Purchase Contracts state that Yuma Bay Development is incorporated in the Dominican Republic, not Panama.

[10] Although defendants cite a number of other actions pending in the Dominican Republic, these cases all appear to relate to disputes between individual investors and Yuma Bay. (*See* Defs.' Mem. of Law at 9-10.) They do not, therefore,

implicate the January 2006 Agreement.

[11] To the extent plaintiffs assert a "counterclaim" for a default judgment in the Second Amended Complaint, the Court denies that motion for the same reasons it stated in footnote 8 of the August 18 Memorandum and Order.

parties shall proceed with discovery at the direction of Magistrate Judge Lindsay.

        SO ORDERED.

        _____
        JOSEPH F. BIANCO
        United States District Judge

Dated: September 14, 2010
Central Islip, New York

* * *

Plaintiffs are represented by Edward Robert Adams, Obermayer and Adams, LLP, 225 Broadway, Suite 1400, New York, NY 10007. The moving defendants are represented by Samuel B. Reiner, Reiner and Reiner, P.A., 9100 S. Dadeland Blvd., Suite 901, Miami, FL 33156.